Argued July 20, modified July 31, 1923.

# STATE EX REL. CARSON *v.* KOZER.

### (217 Pac. 827.)

**Statutes—Initiative and Referendum Laws Liberally Construed in Favor of Exercise of Powers.**

1. In the absence of fraud, initiative and referendum election laws are liberally construed in favor of the exercise of the powers conferred.

**Statutes—Referendum Statutes Construed to Intend Use of Single Ballot Title on Official Election Ballots.**

2. Under Constitution, Article IV, Section 1, providing for referendum of statutes on petition of a stated number of electors, and Laws of 1903, page 244, making it effective, Section 5 of which requires the Secretary of State to notify the Governor of the filing of a referendum petition and the Governor to publish a proclamation of such fact four consecutive weeks in each judicial district, it was not intended that, in cases where two separate organizations petitioned to submit the same law, a double referendum should be had, with double titles on the ballots, in view of Section 6, providing that the Secretary of State, in notifying various county clerks, "shall use for each measure a title designated for that purpose," etc., and in view of the language of Laws of 1907, page 401, Section 5, and Laws of 1917, page 230, Section 2 (codified as Section 4100, Or. L.), and Sections 4101, 4103, Or. L., using the word "title" in the singular.

**Statutes—Repeal and Re-enactment of Statute Constitutes Continuation of It.**

3. The repeal and simultaneous re-enactment of the same statute is not to be considered a repeal, but as a continuation thereof.

**Statutes—Name or Title of Measure to be Printed but Once on Referendum Ballot.**

4. Where two separate petitions for referendum of a measure are filed under Constitution, Article IV, Section 1, Section 4100, Or. L., providing that the Secretary of State shall print in the official ballots the titles certified to him referring to the general and short titles certified by the Circuit Court on appeal, does not require that the titles therein referred to shall be printed more than once, and Section 4003, requiring names of persons nominated to be printed on the ballot but once, applies by analogy to the name or title of the measure, and it should be printed but once in such case pursuant to such Section 4100.

**Statutes—Requirement as to Printing Names of Referendum Sponsors on Ballot Title Held not Mandatory.**

5. The requirement of Section 4100, Or. L., that the referendum ballot title shall contain the names of the referendum sponsors, is not mandatory because it relates to form, whereas

printing the measure to be voted on relates to the essence of the thing to be done.

**Injunction—Injunction Proper Remedy to Prevent Secretary of State from Submitting Double Ballot Title on Referendum Vote.**

6. Where two organizations have separately and successfully petitioned for a referendum under Constitution, Article IV, Section 1, an injunction will lie by the state, on the relation of the district attorney, to restrain the Secretary of State from certifying two ballot titles to the several county clerks submitting a measure entitled "Income Tax Law" (Laws of 1923, p. 410), to the people.

**Statutes—Proper Ballot Title Where Two Organizations Successfully Demand Referendum of Same Law, Stated.**

7. Where two organizations petitioned separately to submit a measure to a referendum vote under Constitution, Article IV, Section 1, the Secretary of State, should certify to the county clerks a ballot title in substance as follows:

"Proposed Law—Referred to the People by Referendum Petition. Referred by [name of organization sponsoring petition], by ——, president; by ——, secretary; and by [name of second organization], by ——, president; by ——, vice-president; by ——, secretary. Short Title: [Name of Act.] Purpose: To provide for, etc. 300 Yes. 301 No. Vote Yes or No."

From Marion: GEORGE G. BINGHAM, Judge.

In Banc.

John H. Carson, district attorney for Marion County, Oregon, as relator, commenced this proceeding in the Circuit Court of the State of Oregon for Marion County, against Sam A. Kozer, as Secretary of State of the State of Oregon, for the purpose of enjoining him, as such officer, from causing a ballot title to be printed twice upon the same ballot at the special general state election to be held on November 6, 1923.

The thirty-second regular session of the legislative assembly of Oregon enacted Chapter 279, General Laws of Oregon, 1923, entitled:

"An act, providing for the levying, collecting and paying of an income tax on individuals, partnerships and resident or nonresident corporations residing, incorporated or doing business within and without the

state of Oregon; such tax being based upon net income; providing rules and regulations, and prescribing penalties, and providing for the commutation of taxes by the exemption of certain personal property from general taxation; providing for the calling of a special election in the event this act is referred to the people, and making an appropriation for carrying out this act and for paying expenses of such special election.''

The act was approved by the Governor on February 26, 1923, and filed in the office of the Secretary of State on that day.

It appears from the record that on or about March 22, 1923, an organization under the name of ''Oregon Just Tax League,'' R. W. Hagood, President, and E. O. Isler, Secretary, filed with the Secretary of State of Oregon a petition for the referendum of that measure to the people of the State of Oregon, for their approval or rejection at the special general election to be held November 6, 1923. In accordance with the direction contained in Chapter 176, General Laws of Oregon, 1917 (codified as § 4100, Oregon Laws), the Secretary of State forthwith transmitted to the Attorney General two copies of that petition, for the purpose of the preparation of a ballot title therefor.

On or about March 22, 1923, another organization under the name of ''State Income Tax Referendum League,'' Cyril G. Brownell, President, W. M. McConnell, Vice-President, J. D. M. Crockwell, Secretary, filed with the Secretary of State a petition for the referendum of the Income Tax Act hereinbefore referred to. The Secretary of State forthwith transmitted to the Attorney General two copies of that petition, and on March 26, 1923, the Attorney General provided a ballot title for the peti-

tion and returned it to the Secretary of State, together with the title so prepared by him. That ballot title reads:

"Referred by the State Income Tax Referendum League, 801 Wilcox Building, Portland, Oregon; Cyril G. Brownell, President, 825 E. Harrison Street, Portland, Oregon; W. M. McConnell, Vice-President, 22½ N. 20th Street, Portland, Oregon; J. D. M. Cockwell, Secretary, 3108 62d Street S. E., Portland, Oregon— INCOME TAX ACT—Purpose: To provide for the levying, collecting and paying of an income tax on individuals, partnerships and resident and nonresident corporations residing, incorporated, or doing business within and without the state of Oregon, such tax being based upon net income; providing the rules and regulations for computing and reporting such incomes and the tax thereon; and making certain exemptions."

On March 29, 1923, the Attorney General provided a ballot title for the petition first hereinabove mentioned, and filed the same with the Secretary of State. That ballot title reads:

"Referred by the Oregon Just Tax League, 920 Northwestern Bank Building, Portland, Oregon: R. W. Hagood, President, 1109 E. Davis Street, Portland, Oregon; E. O. Isler, Secretary, R. F. D. No. 1, Portland, Oregon—INCOME TAX ACT—Purpose: To provide for the levying, collecting and paying of an income tax on individuals, partnerships and resident and nonresident corporations residing, incorporated or doing business within and without the state of Oregon, such tax being based upon net income; providing the rules and regulations for computing and reporting such incomes and the tax thereon; and making certain exemptions."

On May 1, 1923, a referendum petition (referring Income Tax Act), full and complete as to form, signed by more than 8,437 legal registered voters of the

State of Oregon, was filed with the Secretary of State by the Oregon Just Tax League.

On May 11, 1923, a like petition, for a like purpose, signed by another group of legal registered voters of the State of Oregon numbering more than 8,437, was filed with the Secretary of State by the State Income Tax Referendum League.

Both petitions comply with the forms of law.

The complaint on file avers, among other things, that—

" * * Said Secretary of State threatens to, and will, unless restrained, print as one separate measure to be voted upon by the people at said election, the said ballot title set forth in Paragraph 5 of this complaint as appearing upon said referendum petition filed by the said Oregon Just Tax League, and will print on the same ballot, as a separate measure to be voted upon by the people of the State of Oregon at said election, the ballot title appearing upon said referendum petition filed by the said State Income Tax Referendum League.

"That to print both of said ballot titles upon said election ballot is unauthorized and would be a double submission of the same question and would result in confusion and prevent a fair expression of the people's will on the one measure that is to be submitted to the people as a result of said referendum petition."

A demurrer was interposed to the complaint, upon the ground that it failed to state facts sufficient to constitute a cause of suit. The demurrer was overruled and, the defendant refusing to plead further, a decree was entered restraining Sam A. Kozer, as Secretary of State of the State of Oregon, from printing upon the ballot of the special general election to be held on November 6, 1923, the ballot title prepared and attached to the referendum petition filed by the State Income Tax Referendum League

The defendant appeals, and alleges manifest error, on the face of the record, in overruling the demurrer; in entering the decree restraining the defendant from printing upon the ballot of the special election the ballot title attached to the referendum petition filed by the State Income Tax Referendum League, and enjoining the printing of any ballot title other than that filed by the Oregon Just Tax League.

Modified.

For appellant there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, and *Mr. Willis S. Moore,* Assistant Attorney General, with an oral argument by *Mr. Van Winkle.*

For respondent there was a brief over the name of *Messrs. McCamant & Thompson,* with an oral argument by *Mr. W. Lair Thompson.*

BROWN, J.—1. In the application of the law to the facts in this cause, it is well to keep in mind that this is not a case wherein there is any charge of fraud. The laws under consideration are to be liberally construed in order to effectuate their purpose.

In *State ex rel. Case* v. *Superior Court,* 81 Wash. 623, 632 (143 Pac. 461, 463, Ann. Cas. 1916B, 838), the Supreme Court of Washington said, relating to the construction of initiative and referendum election laws:

" * * It is worthy of note, and that we keep in mind as we proceed, that these initiative and referendum provisions of our Constitution are all embodied in one section, which contains these words: 'This section is self-executing, but legislation may be enacted especially to facilitate its operation.' * * Thus there is strongly suggested, in the language of the Constitution and this law, a required liberal construction, to

the end that this constitutional right of the people may be facilitated, and not hampered, by either technical statutory provisions or technical construction thereof, further than is necessary to fairly guard against fraud and mistake in the exercise by the people of this constitutional right.''

This language was approved in the case of *State ex rel. Howell, Secretary of State,* v. *Superior Court of Thurston County et al.,* 97 Wash. 569 (166 Pac. 1126, 1129).

The only purpose of this litigation is to require that an official ballot be supplied to the legal voters of this state at the special general election on November 6, 1923, which shall contain the question submitted, in a plain, clear and concise form, in accordance with law.

The question for us to determine is whether the measure to be submitted to the legal voters for their approval shall have one, or two, ballot titles printed upon the official ballot.

Organizations representing two groups of petitioners, with like intentions, have filed like petitions containing signatures of legal voters, demanding the referendum of the same measure. The petitions comply with the forms of law. Each group has filed the signatures of sufficient legal voters to refer the measure involved. Each petitioner expresses the same demand, in like language. Each petition seeks the same result, i. e., the referendum of the Income Tax Act to the people of the state for their approval.

Article IV, Section 28, of our Constitution, reads, in part:

''No act shall take effect until ninety days from the end of the session at which the same shall have been passed, except in case of emergency * * .''

Under Article 4, Section 1, a referendum ''may be ordered (except as to laws necessary for the im-

mediate preservation of the public peace, health or safety) * * . Referendum petitions shall be filed with the Secretary of State not more than ninety days after the final adjournment of the session of the legislative assembly which passed the bill on which the referendum is demanded.''

· Article IX, Section 1-a, Constitution, provides:

''The legislative assembly shall not declare an emergency in any act regulating taxation or exemption.''

At the expiration of the ninety days' constitutional bar against the effectiveness of the Income Tax Act, we find the measure barred from becoming a law by petitioners who are legal voters of the state, under their power of referendum reserved by the Constitution.

The constitutional provision designated Section 1, Article IV, Constitution of Oregon, as amended in 1902, is self-executing: *Stevens* v. *Benson*, 50 Or. 269 (91 Pac. 577). This constitutional provision reads:

''The Secretary of State * * shall be guided by the general laws and the act submitting this amendment, until legislation shall be especially provided therefor.''

In compliance with our Constitution, the legislative assembly of the twenty-second regular session enacted a law entitled:

''An act making effective the initiative and referendum provisions of Section 1 of Article IV of the Constitution of the state of Oregon, and regulating elections thereunder, and providing penalties for violations of provisions of this act.'' Gen. Laws Oregon, 1903, p. 244.

Section 5 of that act provided that immediately upon the filing with the Secretary of State, within the time required by the Constitution, of a referendum

petition signed by the number of legal voters designated by the Constitution, that officer should immediately notify the Governor, in writing, of such fact—

"and the Governor shall forthwith issue his proclamation, announcing that such petition has been filed, with a brief statement of its tenor and effect. Said proclamation shall be published four times in four consecutive weeks * * in each judicial district of * * Oregon."

2. It was not intended that the Governor should issue another proclamation upon the filing of an additional complete petition for the referendum of the same measure. A double referendum of a measure was never in the legislative mind.

Section 6 of the act provided that the Secretary of State shall furnish the various county clerks

"his certified copy of the titles and numbers of the various measures to be voted upon * * and *he shall use for each measure a title designated for that purpose* by the legislative assembly, committee, or organization * * filing with him the act, constitutional amendment, or petition for the initiative or the referendum. Provided that such title shall in no case exceed twenty words."

Section 4101, L. O. L., so far as it applies to the duty of the Secretary of State in relation to the designation and numbering of measures, remains practically the same in the present law as in the statute of 1903.

By the twenty-fourth session of the legislative assembly, another act was passed—

"to provide for carrying into effect the initiative and referendum powers reserved by the people in Section 1 and Section 1-a of Article IV of the Constitution of the State of Oregon * * ." Gen. Laws Oregon, 1907, Chap. 226, p. 398.

This latter act repealed the former, but many of the provisions of the repealed act were copied into the 1907 law and are yet in force.

Section 5 of the act of 1907 provided, among other things:

"When any measure shall be filed with the Secretary of State to be referred to the people of the state * * , the Secretary of State shall forthwith transmit to the Attorney General of the state a copy thereof, and within ten days thereafter the Attorney General shall provide and return to the Secretary of State a ballot title for said measure. The ballot title may be distinct from the legislative title of the measure, and shall express, in not exceeding one hundred words, the purpose of the measure. The ballot title shall be printed with the numbers of the measure, on the official ballot."

There is no suggestion in the law for a double ballot title. There shall be one printing of the numbers of the measure, and one printing of the ballot title.

Said Section 5, as later amended, in part, reads:

"The ballot title shall contain: (1) The name or names of the person or persons, organization or organizations under whose authority the measure is to be initiated or referred. (2) A distinctive short title in not exceeding ten words by which the measure is commonly referred to or spoken of and which shall be printed in the foot margin of each signature sheet of the petition. (3) A general title which may be distinct from the legislative title of the measure, expressing in not more than one hundred words the purpose of the measure." Gen. Laws Or. 1917, Chap. 176, p. 228 (codified as § 4100, Or. L.).

The purpose of the distinctive short title is to help identify the measure. It is the popular name or designation of the measure. The general title informs the voter of the "purpose of the measure." The

names of the sponsors of a referendum are included in the ballot title in order to fix responsibility for the referring of the measure.

Under the provisions of Section 4101, Or. L., the duty of the Secretary of State relative to certifying copies of ballot titles and numbers of the measure or measures to be voted upon has been continued from the Act of 1903, "and he shall use for each measure the ballot title designated in the manner herein provided."

3. It is a rule of statutory construction often applied by this court, that the repeal and simultaneous re-enactment of the same statutory provisions is not to be considered as a repeal, but that it should be interpreted as a continuation thereof.

" * * The affirmative of the first measure shall be numbered 300, and the negative 301, in numerals, and the succeeding measures shall be numbered consecutively 302, 303, 304, 305, and so on, at each election." Section 4101, Or. L.

Reading the provisions of the law relative to direct legislation elections, it is apparent that it was never intended by the legislative power that a measure should go before the people with a plurality of titles. The ballot title, when printed once, is clear and informative, but a double printing may confuse and is not authorized by statute.

At Section 4100, Oregon Laws, we have:

"The *ballot title* shall be printed with the numbers of the measure on the official ballot."

Again, at Section 4101, Oregon Laws, we find:

"Such ballot title shall not resemble, so far as to probably create confusion, any such title previously filed for any measure to be submitted at that election."

Again:

"Not later than the 19th day before any general election, nor later than thirty days before any special election, * * the Secretary of State shall cause to be printed, in pamphlet form, a true copy of the title and text of each measure to be submitted, with the number and form in which the ballot title thereof will be printed on the official ballot." Section 4103, Or. L.

4. It is suggested in one of the briefs that the following language supports the contention of the defendant:

"The Secretary of State shall print in the official ballot the titles thus certified to him."

The ballot titles certified to the Secretary of State are the ones that are certified by the Circuit Court upon appeal, and the quoted excerpt refers to ballot titles so certified.

It is provided that—

"Any person who is dissatisfied with the ballot title, or the short title, provided by the Attorney General for any measure, may appeal from his decision to the Circuit Court. * * Said Circuit Court shall thereupon examine said measure, hear arguments, and in its decision thereon certify to the Secretary of State a ballot title, and a short title, for the measure, in accord with the intent of this section. The decision of the Circuit Court shall be final. The Secretary of State shall print on the official ballot the titles thus certified to him." Section 4100, Or. L.

Section 4003, Oregon Laws, provides:

"The name of each person nominated shall be printed upon the ballot in but one place."

By analogy, that provision applies to the name or title of the measure appearing upon the official ballot. It should be printed but once. This is true, whether

we consider the two groups of petitioners as separate petitioners or treat the petitions as one.

The popular name of the measure is: "Income Tax Act." That designation aids and assists the voter in identifying the measure, and, as we have seen, is common to each petition. We have also pointed out that the "general title" provided for the instruction of the voter as to the purpose of the measure is common to each petition. When these essentials of the ballot title are printed upon the official ballot once, the "distinctive short title" and the "general title" of each group of petitioners appear on the ballot. Neither group has a right to insist that these titles shall be printed twice. They must be printed once. It is a direction of the statute that the names of persons or organizations under whose authority the measure is referred constitute a part of the ballot title. Therefore, the ballot title consists of the "distinctive short title," the "general title," and the names of the persons or organizations under whose authority the measure is referred.

The whole course of legislation in the matter of providing ballot titles shows the intention of the law-maker to afford to the voter a clear understanding of the subject matter of the measure submitted; and legislative intent, when discerned from the law, as written, is the law.

5. It was urged at the hearing that the printing of the names of the sponsors of the referendum is not mandatory. With this contention the writer agrees, because the people are to vote on the measure, and not on the organizations. The names of the promoters on the ballot relate to form.

The following is a concise definition of mandatory and directory statutes:

"As to mandatory and directory statutes, it is said that when the provision of a statute is the essence of the thing required to be done, it is mandatory; otherwise, when it relates to form and manner; and where an act is incident, or after jurisdiction acquired, it is directory merely." 2 Bouvier's Law Dictionary, p. 1032.

An established general rule relating to the conduct of elections is as follows:

"Statutes giving directions as to the mode and manner of conducting elections will be construed by the courts as directory, unless a noncompliance with their terms is expressly declared to be fatal or will change or render doubtful the result. * * Where the terms of the statute are absolute, explicit and peremptory, no discretion is given; * * but this rule must be considered in connection with another rule, that a statute prescribing the duties of election officers may be held either mandatory or directory, according to the time and manner in which it is questioned. Before election it is mandatory if direct proceedings for its enforcement are brought. But after election it would be held directory, in support of the result, unless of a character to effect an obstruction to the free and intelligent casting of the vote or the ascertainment of the result, or unless the provisions affect an essential element of the election, or it is expressly declared by statute that the particular act is essential to the validity of the election, or that its omission will render it void." 20 C. J., p. 181, § 223.

In the case at bar, no election has been held, and it is well for the Secretary of State to follow the law, as written, regardless of its directory or mandatory character.

6, 7. The plaintiff is entitled to relief substantially as prayed for in his alternative prayer; that is to say, Sam A. Kozer, as Secretary of State of the State of Oregon, is enjoined from certifying two ballot

titles to the several county clerks of the State of Oregon submitting to the legal voters of this state the measure known as the ''Income Tax Act,'' designated Chapter 279, General Laws of Oregon, 1923, and, as such officer, is directed to certify to such county clerks for the referring of that measure, a ballot title, in substance, as follows:

''PROPOSED LAW—Referred to the People by
        Referendum Petition.
''Referred by Oregon Just Tax League:
        By R. W. Hagood, President.
        By E. O. Isler, Secretary.
''And by State Income Tax Referendum League:
        By Cyril G. Brownell, President.
        By W. M. McConnell, Vice-President.
        By J. D. M. Crockwell, Secretary.
''Short Title: INCOME TAX ACT.
''Purpose: To provide for the levying, collecting and
        paying of an income tax on individuals, partner-
        ships and resident and nonresident corporations
        residing, incorporated or doing business within
        and without the State of Oregon, such tax being
        based upon net income; providing the rules and
        regulations for computing and reporting such
        incomes and the tax thereon; and making certain
        exemptions.
''300   Yes.                    Vote YES or No.''
''301   No.

The section of the statute providing for the framing of ballot titles does not direct that the addresses of the sponsors of the referendum be given.

Neither party shall recover costs in this court.

                                        MODIFIED.


MCBRIDE, C. J., not sitting.