Argued June 11, affirmed June 21, 1929.

L. V. SMITH *v.* ISAAC L. PATTERSON, GOVERNOR, ET AL.

(279 Pac. 271.)

For appellant there was a brief and oral argument by *Mr. Fred W. Packwood.*

For respondents there was a brief over the name of *Mr. I. H. Van Winkle,* Attorney General, with an oral argument by *Mr. Willis S. Moore,* Assistant Attorney General.

BELT, J.—The plaintiff, a taxpayer and citizen of this state, challenges the constitutionality of Chapter 251, General Laws of Oregon of 1929, entitled

"An Act to provide for the management, control, support and operation of the state institutions of higher education; to create a state board of higher education; to determine the method of its appointment; to prescribe its powers and duties; and to abolish the board of regents of the University of Oregon, the board of regents of the Oregon State Agricultural college, the board of regents of the Oregon normal schools and the board of higher curricula; providing for a survey and reorganization of the work and activities of the higher educational institutions; amending section 1, chapter 36, General Laws of Oregon, 1920, special session; repealing sections 5428, 5443 and 5466, Oregon Laws, and chapter 368, General Laws of Oregon, 1925, and all acts and parts of acts in conflict herewith, and declaring an emergency."

This act purports to create a board of higher education consisting of nine members to be appointed by the Governor with the consent of the senate, to exercise control, management and supervision over state institutions of higher education. The board is "invested with all the powers and duties of the board of regents of the University of Oregon, the board of regents of the Oregon State Agricultural college, the board of regents of the normal schools, and the board of higher curricula, which boards hereby are abolished, effective July 1, 1929." Section 10 of the act provides: ·

"The board shall inaugurate its program beginning July 1, 1931, and shall have full authority to reorganize the work of each and all of the institutions under its control so as to eliminate unnecessary duplication of equipment, courses, departments, schools, summer schools, extension activities, offices, laboratories and publications."

By Section 11 the board is authorized to allocate to the respective institutions over which it has supervision and control

"all funds then available and all funds which under laws then existing shall become available during the succeeding biennium from all sources, so far as they can be ascertained, in accordance with the program of said board, provided for in section 10 of this act."

Section 15 purports to amend Section 1, Chapter 36, General Laws of Oregon of 1920, so as to read as follows:

"Sec. 1. That there shall be included in the state levy of taxes each year an amount equal to two and four-hundredths mills on the dollar of the total value of all taxable property of the state of Oregon according to the assessment and equalization thereof for said year, for the use of the Oregon Agricultural

college, the University of Oregon and the state normal schools.''

Section 17 provides for the repeal of Sections 5428, 5443 and 5466, Oregon Laws, and of Chapter 368, General Laws of Oregon of 1925. Section 18 declares an emergency to exist and that the act shall take effect and be in full force from and after its passage.

Referring to the acts repealed, Section 5428, passed in 1913, provided for the levy of a tax of three-tenths mill for the support and maintenance of the University of Oregon. Section 5443, passed in the same year, authorized the levy of a four-tenth mill tax for the support and maintenance of the Oregon State Agricultural College. Section 5466, enacted by the legislature in 1911, authorized an annual tax of one twenty-fifth mill for the support and maintenance of ''the Oregon Normal School at Monmouth, in Polk County, Oregon.'' Chapter 368, General Laws of Oregon of 1925, levied an annual tax of one twenty-fifth mill for the support and maintenance of the Southern Oregon State Normal School at Ashland, Jackson County, Oregon. Chapter 36, General Laws of Oregon of 1920, which is amended by Chapter 251, General Laws of Oregon of 1929, is entitled ''An act to provide additional revenue for the Oregon State Agricultural College, University of Oregon, and Oregon State Normal School.'' Section 1 of the 1920 act provides:

''That there shall be included in the state levy of taxes each year an amount equal to one and two-tenths mills on the dollar of the total value of all taxable property of the state of Oregon, according to the assessment and equalization thereof for said year, four-sevenths thereof for the use of the Oregon agricultural college and three-sevenths thereof for the use of the university of Oregon, and a like levy of

six-one hundredths of a mill on all taxable property of the state for the use of the Oregon state normal school."

This tax levy, being in excess of the amount of taxes levied by the state for the preceding year plus six per centum thereof, was submitted by the legislature for the approval of the people at a special election and received an affirmative vote.

■ Plaintiff asserts that the 1929 act contravenes article IX, Section 3 of the Oregon Constitution, which provides that:

"No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied."

Looking to the act in question we find that the two and four-hundredths mills tax is for the use of the "Oregon Agricultural College, the University of Oregon and the state normal schools." We can see no merit in this contention. In the prior statutes to which attention has been directed the taxes levied were to be used for the same purpose, namely, the support and maintenance of state institutions of higher education.

■ The only modification or amendment of these prior statutes is that, under the 1929 act, the board of higher education is authorized to allocate to the respective educational institutions, in accordance with its discretion, funds received through the various tax levies, whereas, prior to the 1929 act, there was a specific direction as to the funds each institution should receive. In conferring upon the board the power thus to allocate the funds, the legislature, in our opinion, did not surrender or abdicate any of its sovereignty vested in it by the Constitution. It did not delegate

legislative authority to the board, but merely conferred upon it, as agent of the state, certain administrative duties.

 The 1929 act is a revisory statute. It is not a revenue producing measure. There is merely a continuation of the tax levies previously authorized. No additional tax burden will be imposed. It will be observed that a tax levy of two and four-hundredths mills equals in the aggregate the several tax levies made prior to 1929. Whether this act is held constitutional or unconstitutional, plaintiff, by reason thereof, is obliged to pay the same amount of taxes. We can see no way in which he has been injured.

In construing the statute we look to what the legislature had in mind to accomplish. Clearly there was no intention to create additional funds. The allocation of the funds was the problem which the legislature undertook to and did solve.

The subject matter of the statutes repealed and amended was incorporated in the amendatory act. In considering a similar question the United States Supreme Court in *Bear Lake & River Water Works & Irrigation Co.* v. *Garland,* 164 U. S. 1 (41 L. Ed. 327, 17 Sup. Ct. Rep. 7), said:

"Upon comparing the two acts of 1888 and 1890 together, it is seen that they both legislate upon the same subject, and in many cases the provisions of the two statutes are similar and almost identical. Although there is a formal repeal of the old by the new statute, still there never has been a moment of time since the passage of the act of 1888 when these similar provisions have not been in force. Notwithstanding, therefore, this formal repeal, it is, as we think, entirely correct to say that the new act should be construed as a continuation of the old with the modification contained in the new act. This is the same principle that is recognized and asserted in

*Pacific Mail S. S. Co.* v. *Joliffe,* 2 Wall. 450, 459 [17 L. Ed. 805]. In that case there was a repeal in terms of the former statute, and yet it was held that it was not the intention of the legislature to thereby impair the right to fees which had arisen under the act which was repealed. As the provisions of the new act took effect simultaneously with the repeal of the old one the court held that the new one might more properly be said to be substituted in the place of the old one, and to continue in force, with modifications, the provisions of the old act, instead of abrogating or annulling them and re-enacting the same as a new and original act.''

This court in *State ex rel. Carson* v. *Koser,* 108 Or. 550 (217 Pac. 827), stated:

"It is a rule of statutory construction often applied by this court that the repeal and simultaneous re-enactment of the same statutory provisions is not to be considered as a repeal, but that it should be interpreted as a continuation thereof.''

The rule is thus stated in *United Hebrew Benevolent Assn.* v. *Benshimol,* 130 Mass. 325:

"It is a familiar rule of construction, that when statutes are repealed by acts which substantially retain the provisions of the old laws, the latter are held not to have been destroyed or interrupted in their binding force.''

Also see *State ex rel.* v. *Slusher,* 119 Or. 141 (248 Pac. 353).

The provisions of the prior statutes have been reenacted in the amendatory act and, in addition thereto, there have been incorporated certain sections pertaining to the control and management of institutions of higher education, all of which are germane to the title. No legislator who read the title of the amendatory act could have been misled as to its subject matter. The words, "to provide for the * *

support * * of the state institutions of higher education" are sufficiently broad and comprehensive for the re-enactment of the tax levies in question: *State ex rel. Kahn* v. *Tazwell*, 125 Or. 528 (266 Pac. 238, 59 A. L. R. 1436), and cases cited therein.

■ Assuming, but not deciding, that the act of 1929 is one "regulating taxation" and for that reason violates Article IX, Section 1a, of the Oregon Constitution, in that an emergency was declared, it is immaterial in this proceeding as the time for invoking the referendum has elapsed. Even though the emergency clause were unconstitutional, it would not vitiate the entire act. The precise question which plaintiff urges relative to declaration of an emergency in acts regulating taxation was before this court in *State ex rel.* v. *Kozer*, 121 Or. 459 (255 Pac. 900), and was decided adversely to his contention.

■ It is also urged that the appointment of members of the board whose terms exceeded four years was in violation of Section 2, Article XV, of the Constitution, which provides:

" * * the legislative assembly shall not create any office, the tenure of which shall be longer than four years."

It is the view of the court that a member of this board of higher education is not an "officer" within the meaning of the above constitutional provision: *Bennett Trust Co.* v. *Sengstacken*, 58 Or. 333 (113 Pac. 863); *David* v. *Portland Water Committee*, 14 Or. 98 (12 Pac. 174).

We see no other questions presented which merit attention.

In our opinion, Chapter 251, General Laws of Oregon of 1929, is not unconstitutional, and the Circuit

Court was right in sustaining a demurrer to the complaint and in dismissing the suit.

Decree affirmed. AFFIRMED.

BROWN, J., absent.