Argued and submitted September 17, reversed
November 26, 1979, reconsideration denied January 3,
petition for review allowed February 12, 1980

**WRIGHT,**
*Respondent,*
*v.*
**STATE ACCIDENT INSURANCE FUND,**
*Petitioner.*

(No. 77-657, CA 14540)

602 P2d 1086

Darrell E. Bewley, Associate Counsel, Salem, argued the cause for petitioner. With him on the brief were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, Salem.

David R. Vandenberg, Jr., Klamath Falls, argued the cause for respondent. With him on the brief were Bradford J. Aspell and Boivin, Boivin & Aspell, Klamath Falls.

Before Tanzer, Presiding Judge, and Thornton and Campbell, Judges.

TANZER, P. J.

## TANZER, P. J.

The State Accident Insurance Fund appeals from a Workers' Compensation Board finding that the claimant's condition is compensable as an occupational disease. SAIF contends that the claimant is not entitled to the statutory presumption of firemen's occupational diseases and that he has not shown by a preponderance of the evidence that his disease is work related. We reverse.

The claimant worked as a fireman for the City of Klamath Falls from 1967 until September, 1976, when pericardial (heart-related) and pleuritic (lung-related) pains forced him to stop working. He had undergone medical examinations prior to his employment which had revealed no cardiac or respiratory problems. Apparently the claimant first experienced pleuritic pain shortly after a serious fire at which he had breathed super-heated smoke. The heart pains, he testified, had begun before the fire.

Early in the course of treatment the treating doctor suspected the pains were caused by a viral infection of the pericardium, the membrane surrounding the heart. The infection was thought to have affected both the pericardial and pleural membranes, causing heart and respiratory pain. In a letter to SAIF in late 1976, the treating doctor dismissed the idea that the condition arose out of the claimant's employment, stating flatly that "[t]he disease obviously was not caused by his work." At the same time, the doctor acknowledged that work aggravated the pain: "He has had aggravation, however, of chest pain on working long hours and has had a fall which seemed to make his chest pain worse. It would seem reasonable to assume that his pain was aggravated by his work activities."

The continuation of the claimant's pain has baffled the doctors who have dealt with his case. He was tested at the Mayo Clinic, the University of Oregon Health Sciences Center, and the Portland Pain Center. Open-heart surgery relieved the pericardial pain for a short

[281]

while. Tests on pericardial tissue excised during surgery did not aid diagnosis. The results of psychological testing at the Pain Center suggested the possibility that a fear of death and an underlying desire to avoid a return to his dangerous occupation may be the psychosomatic cause of the continuation of the pain. The suggestion, however, was in the nature of speculation, not scientific conclusion. Otherwise, the diagnoses resulting from tests and surgery were that the condition was idiopathic (that is, of no known origin) or organic.

The claimant relies on ORS 656.802 to support his claim for an occupational disease. It provides:

"(1)   As used in ORS 656.802 to 656.824, 'occupational disease' means:

"* * * * *

"(b)   Death, disability or impairment of health of firemen of any political division who have completed five or more years of employment as firemen, caused by any disease of the lungs or respiratory tract, hypertension or cardiovascular-renal disease, and resulting from their employment as firemen.

"(2)   Any condition or impairment of health arising under paragraph (b) of subsection (1) of this section shall be presumed to result from a fireman's employment. However, any such fireman must have taken a physical examination upon becoming a fireman, or subsequently thereto, which failed to reveal any evidence of such condition of impairment of health which preexisted his employment. Denial of a claim for any condition or impairment of health arising under paragraph (b) of subsection (1) of this section must be on the basis of medical or other evidence that the cause of the condition or impairment is unrelated to the fireman's employment."

ORS 656.802 was amended in 1977.[1]

---

[1] Prior to the 1977 amendment, ORS 656.802 provided:

"(1) As used in ORS 656.802 to 656.824, 'occupational disease' means:

"* * * * *

In *Wick v. SAIF*, 37 Or App 285, 587 P2d 477 (1978), we considered without deciding whether the statute as amended or in its preamendment form applies to a condition which arose before the 1977 amendment but which is being reviewed after the amendment. We conclude that the 1977 amendment is merely a rewording of the preexisting statute, intended to clarify rather than to modify it. Although the legislature changed the phrase "disputable presumption" to simply "presumption," the last sentence of the amended statute shows that the presumption is still a disputable one. Therefore, under either version of the statute, our analysis is the same.

As we recognized in *Pflughaupt v. SAIF*, 26 Or App 77, 80, 552 P2d 284 *rev den* (1976), a disputable presumption stands when it is not opposed by evidence, but falls with the introduction of opposing evidence.

> "* * * [T]he Oregon legislature intended that the presumption apply and bind the jury only where there is no opposing evidence. If there is some opposing evidence, the trier of fact may consider all evidence on both sides and come to its own conclusion. If the evidence is in equipoise, the trier of fact must find for the defendant because the plaintiff had not met his burden of proof." (Footnote omitted.)

In *Wick v. SAIF*, 37 Or App at 288, we applied the disputable presumption rule to firemen's occupational diseases:

> "* * * [T]he fireman's presumption disappeared the moment that any significant evidence that a

---

"(b) Death, disability or impairment of health of firemen of any political division who have completed five or more years of employment as firemen, caused by any disease of the lungs or respiratory tract, hypertension or cardiovascular-renal disease, and resulting from their employment as firemen.

"(2) Any condition or impairment of health arising under paragraph (b) of subsection (1) of this section shall be disputably presumed to result from a fireman's employment; provided, however, that any such fireman must have taken a physical examination upon becoming a fireman, or subsequently thereto, which failed to reveal any evidence of such condition or impairment of health which preexisted his employment."

[283]

claimant's condition was not caused by employment as a firefighter was introduced. The decision was then to be made strictly by weighing the evidence and determining whether the claimant had proven causation by a preponderance." (Citations omitted.)

In this case, there is significant evidence to dispute the presumption that this is an occupational disease. The statement of the treating physician that "[t]he disease obviously was not caused by his work" is sufficient evidence to eliminate the presumption.

We therefore weigh the evidence. In claimant's favor is the fact that the first medical evidence of any heart or respiratory condition was found shortly after the claimant had fought a serious fire. In addition there is the suggestion, but no conclusion, that a fear of the dangers of his job may cause the pains.

However, we do not find that this evidence outweighs the evidence contained in the mass of medical reports that have accumulated regarding the claimant. We acknowledge that the physicians cannot affirmatively state the cause of the disease, but we also note that they consider the cause to be organic, or in other words, to be not work related.

Having determined that this condition was not caused by the claimant's occupation, we next consider whether the claimant's occupation had caused a compensable aggravation of his condition. The evidence tends to show that firefighting work stimulated the claimant's pain, but there is no evidence that the firefighting aggravated the underlying condition. This is not sufficient to establish a claim. In *Weller v. Union Carbide*, 288 Or 27, 35, 602 P2d 259 (1979), the Supreme Court held that to prevail, the worker must prove that the work activity or condition caused the underlying disease or a worsening of it. *See also Henry v. SAIF*, 39 Or App 795, 593 P2d 1251 (1979). We cannot find that the claimant's employment affected anything more than the symptoms of his disease.

[284]

In conclusion, claimant has not proved by presumption or by a preponderance of the evidence that his heart condition was either caused or aggravated by his employment. We reverse the Workers' Compensation Board and deny the claim for compensation.

Reversed.